No. 24-1334

IN THE

United States Court of Appeals

FOR THE FOURTH CIRCUIT

CONSUMER FINANCIAL PROTECTION BUREAU, COMMONWEALTH OF
MASSACHUSETTS, THE PEOPLE OF THE STATE OF NEW YORK,
COMMONWEALTH OF VIRGINIA,

*Plaintiff-Appellees*,

---v.---

NEXUS SERVICES, INC., LIBRE BY NEXUS, INC., MICHEAL DONOVAN,
RICHARD MOORE, EVAN AJIN,

*Defendant-Appellants*.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA


**DEFENDANT-APPELLANTS' OPENING BRIEF**

Zachary Lawrence

Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
202-468-9486
zach@zlawpllc.com

*Attorneys for Defendant-Appellants*
*Nexus Services, Inc., Libre by Nexus,*
*Inc, Micheal Donovan, Richard Moore,*
*and Evan Ajin*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1334</u>        Caption: <u>Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Evan Ajin</u>
(name of party/amicus)

_____

 who is _____<u>Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                            ☐ YES ☑ NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Zachary Lawrence        Date:     May 02, 2024

Counsel for: Evan Ajin

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1334      Caption: Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Libre by Nexus, Inc.
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?                         ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?       ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Zachary Lawrence                           Date:    May 02, 2024

Counsel for: Libre by Nexus, Inc.

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1334      Caption: Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Micheal Donovan

(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: ___/s/ Zachary Lawrence_____    Date:    May 02, 2024

Counsel for: ___Micheal Donovan___

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1334          Caption: Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Nexus Services, Inc.

(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                       ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Zachary Lawrence _____    Date: May 2, 2024

Counsel for: Nexus Services, Inc. _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. ___24-1334___     Caption: __Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Richard Moore_____

(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:

(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?                ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                          ☐YES ☑NO
    If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation?                    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
       party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
       caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
       corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational
       victim of the criminal activity and (2) if an organizational victim is a corporation, the
       parent corporation and any publicly held corporation that owns 10% or more of the stock
       of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Zachary Lawrence                                    Date: May 2, 2024
           _____

Counsel for: Richard Moore
             _____

- 2 -

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................i

TABLE OF CITATIONS .............................................iv

JURISDICTIONAL STATEMENT.................................1

STATEMENT OF THE ISSUES.................................1

STATEMENT OF THE CASE.................................2

SUMMARY OF THE ARGUMENT.................................23

ARGUMENT.................................................24

    I.    EVERY INJUNCTION MUST COMPLY WITH FEDERAL RULES OF CIVIL PROCEDURE RULE 65(d) AND THE TRIAL COURT ERRED BY ENTERING AN INJUNCTIONTHAT FAILED TO COMPLY WITH RULE 65(d).

................................................24

        A. Standard of Review

................................................24

        B. The Trial Court's Injunction Violates Rule 65.

................................................25

           1. *The Injunction Is Impermissibly Broad*

................................................25

           2. *The Injunction Is Impermissibly Vague.*

................................................29

           3. *The Above Problems Create Additional Rule 65 Conflicts.*

................................................34

C. Compliance with Rule 65(d) Is Mandatory and Non-Waivable in this Circuit. .................................................................35

D. In Any Event a Failure to Abide by Rule 65 Is a Plain Error. .................................................................39

II.    THE TRIAL COURT ERRED IN GRANTING A DEFAULT SANCTION IN THE FIRST INSTANCE, ONLY NOTICED IN A SUPPLEMENTAL RESPONSE BRIEF, WITHOUT ANALYZING THE EFFICACY OF LESSER SANCTIONS AND ADEQUACY OF NOTICE.

.................................................................44

A.    Standard of Review .................................................................44

B. The Trial Court Abused Its Discretion by Entering a Default Sanction as a First-Instance Sanction under Rule 37. .................................................................55

III.    TRIAL COURT ABUSED ITS DISCRETION BY ENTERING EVIDENTIARY SANCTIONS AFTER THE ENTRANCE OF DEFAULT SANCTIONS GIVEN THE UNIQUE FACTS OF THE CASE.

.................................................................51

A.    Standard of Review .................................................................51

B. The Trial Court Failed to Properly Weigh the Factors Announced in Southern States. .................................................................51

1. *Importance of Evidence* .................................................................52

2. *Surprise and Ability to Cure* .................................................................53

3. *Explanation and Disruption* .................................................................55

C. Given the Already Drastic Sanctions Imposed More Caution Should Have Been Utilized.

.................................................................................55

IV.     TRIAL COURT ERRED IN CALCULATING RESTITUTION
        WHERE IT IS UNCLEAR THE RELIEF GRANTED WAS LEGAL
        IN NATURE AND THE TRIAL COURT RELIED EXCLUSIVELY
        ON JURISPRUDENCE GROUNDED IN EQUITABLE
        RESTITUTION.

.................................................................................56

CONCLUSION

.................................................................................61

STATEMENT REGARDING ORAL ARGUMENT

.................................................................................63

CERTIFICATE OF COMPLIANCE

.................................................................................64

CERTIFICATE OF SERVICE

.................................................................................65

## <u>TABLE OF CITATIONS</u>

### <u>Federal Cases</u>

*Acosta v. La Piedad Corp*., 894 F.3d 947 (8th Cir. 2018) ............... 36

*Additive Controls & Measurement Sys. Inc. v. Flow Data, Inc.,* 986 F.2d 476 (Fed. Cir. 1993) .................................................................. 43

*Alberti v. Cruise*, 383 F.2d 268 (4th Cir. 1967) ........................... 23, 24, 35

*Anderson v. Found. For Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500 (4th Cir. 1998) ........................................... 44, 49

*Brickwood Contractors, Inc. v. Datanet Engeineering, Inc.*, 369 F.3d 385 (4th Cir. 2004) ...................................................... 40, 41

*Brumby Metals, Inc. v. Bargen*, 275 F.2d 46 (7th Cir. 1960) ........ 37

*CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 69 (7th Cir. 2021)

..................................................................... 24, 56, 58, 60

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ..................... 57, 59

*CFPB v. Klopp*, 957 F.3d 454 (4th Cir. 2020) .............. 30, 31, 34, 36, 37

*Chicago & N.W. Transp. Co. v. Ry. Labor Execs.' Ass'n*, 908 F.2d 144 (7th Cir. 1990) ................................................................38

*Choice Hotels Int'l v. Goodwin & Boone*, 11 F.3d 469 (4th Cir.1993)

................................................................45, 50

*Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261 (4th Cir. 1971) ................................................................23

*CPC Int'l, Inc. v. Skippy Inc.,* 214 F.3d 456 (4th Cir. 2000) ........*passim*

*Diapulse Corp. ofAm. v. Carba, Ltd.,* 626 F.2d 1108 (2d Cir. 1980)

................................................................29, 30

*E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108 (8th Cir. 1969)

................................................................33, 34

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ................42

*Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264 (4th Cir. 2003) ................................................................25

*Ferrell v. Pierce*, 785 F.2d 1372 (7th Cir.1986) ................................36, 37

*FTC v. Amy Travel Service, Inc*., 875 F.2d 564 (7th Cir. 1989) .... 58

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) .................................56, 58

*FTC v. Gem Merchandising Corp.*, 87 F.3d 466 (11th Cir.1996) .. 58

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ...............................58, 59, 60

*FTC v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) ........................59

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) ...............58

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .....................57, 58, 59

*Graham Cnty. Soil and Water Conserva. Dist. v. U.S. ex rel. Wilson,* 559 U.S. 280, 290 (2010) .................................................................30, 31

*Gustafson v. Alloyd Co.,* 513 U.S. 561 (1995) ...............................30, 31

*Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36 (4th Cir. 1995)
.................................................................................................*passim*

*Hawkins v. i-TV Digitalis Tavkolesi zrt*, 935 F.3d 211 (4th Cir. 2019)
.................................................................................................24

*In re Gen. Motors Corp.*, 61 F.3d 256 (4th Cir. 1995) .............30, 36

*Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312 (Fed. Cir. 2004)

.................................................................................27

*Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2610, 216 L. Ed. 2d 1208 (2023)

.................................................................................60

*Jennings v. Rodriguez*, 583 U.S. 281 (2018).................................31, 34

*Kreepy Krauly U.S.A., Inc. v. Sta-Rite Indus., Inc.*, 152 F.3d 949, 1998 WL 196750 (Fed. Cir. Apr. 24, 1998),.................................................38

*Lineback v. Spurlino Materials*, LLC, 546 F.3d 491 (7th Cir. 2008)

.................................................................................27

*Liu v. SEC*, 591 U.S. 71 (2020).................................................56, 57

*Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n,* 389 U.S. 64 (1967).................................................................29, 36, 41

*Lowery v. Cir. City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998), *cert. granted, judgment vacated on other grounds*, 527 U.S. 1031 (1999).........25, 26, 27, 42

*Mallet & Co. v. Lacayo,* 16 F.4th 364 (3rd Cir. 2021).................33

*Mey v. Phillips*, 71 F.4th 203 (4th Cir. 2023) ...................................... 44, 45

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88 (4th Cir. 1989). .................................................................. 16, 44, 45

*National Labor Relations Board v. Express Publ'g Co.*, 312 U.S. 426 (1941)
.......................................................................................... 26, 42, 43

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ...................................... 36

*Potomac Elec. Power Co. v. Elec. Motor Supply Inc*, 190 F.R.D.372 (D.Md. 1999) ..
.......................................................................................... 55

*Retiree, Inc. v. Anspach*, 660 Fed.Appx. 582 (10th Cir. 2016) ............ 38

*Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112 (Fed. Cir. 1996)
.......................................................................................... 33

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003) .......................................................................... 51, 52

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ...................................... 29, 36, 41

*Scott v. Clarke*, 355 F.Supp.3d 472 (W.D.Va. 2019)*, aff'd* 852 Fed.Appx. 727 (4th Cir. 2021). ................................................................. 30, 36, 38

*Scott v. Clarke*, 852 Fed.Appx. 727 (4th Cir. 2021) .................... 24, 35, 36, 38

*SEC v. Wallenbrock*, 440 F.3d 1109 (9th Cir.2006) ................... 59

*Smith-Berch, Inc. v. Baltimore Cnty.*, 64 Fed.Appx. 887 (4th Cir. 2003)

................................................................................................ 36

*Speaks v. U.S. Tobacco Coop., Inc*., 31 F.4th 838 (4th Cir. 2022)

................................................................................................ 31

*Taylor v. Va. Union Univ.,* 193 F.3d 219 (4th Cir. 1999) .............. 41

*Thomas v. Brock*, 810 F.2d 448 (4th Cir. 1987) .......................... *passim*

*United States v. Shaffer Equip. Co*., 11 F3d 450 (4th Cir. 1993)

................................................................................................ 45

*Wilkins v. Montgomery*, 751 F.3d 214 (4th Cir. 2014) ................ 52

*Wilson v. Volkswagen of America, Inc*., 561 F.2d 494 (4th Cir.1977), *cert. denied*, 434 U.S. 1020 (1978) ............................................................... 16, 48

*Wudi Industrial (Shanhai) Co., Ltd. v. Wong*, 70 F.4th 183 (4th Cir. 2023)

.......................................................................................41

**State Cases**

*Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 259 S.E.2d 248 (1979)

.......................................................................................31

**Federal Statutes and Rules**

12 U.S.C. §5565.........................................................................1

28 U.S.C. § 1291.........................................................................1

28 U.S.C. § 1331.........................................................................1

28 U.S.C. § 1367.........................................................................1

Fed. R. Civ. P. 37......................................................................51

Fed. R. Civ. P. 65..................................................................*passim*

**Secondary Sources**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*

(2012).......................................................................31

## JURISDICTIONAL STATEMENT

The district court (the "Trial Court") had subject matter jurisdiction over this action pursuant to United States Code Title 28, sections 1331 and 1367 because Plaintiff-Appellees (collectively, "Appellees" or "Government Litigants"), brought an action under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), which presents questions over which the district court could properly exercise federal-question jurisdiction, 28 U.S.C. § 1331; further, the People of the State of New York, the Commonwealth of Virginia, and the Commonwealth of Massachusetts (collectively, "State-Appellees") brought related state law claims over which the district court could exercise supplemental jurisdiction pursuant to Title 28, section 1367(a).

This Court has appellate jurisdiction pursuant to Title 28, section 1291: this is an appeal from a final judgment and order.

## STATEMENT OF THE ISSUES

I. Whether every injunction must comply with Federal Rules of Civil Procedure Rule 65(d) and whether the Trial Court erred by entering an injunction that failed to comply with Rule 65(d)?

II. Whether the Trial Court erred in granting a default sanction in the first instance, only noticed in a supplemental response brief, without analyzing the efficacy of lesser sanctions and adequacy of notice?

III. Whether the Trial Court abused its discretion by entering evidentiary sanctions after the entrance of default sanctions given the unique facts of the case?

IV. Whether the Trial Court erred in calculating restitution where it is unclear the relief granted was legal in nature and the Trial Court relied exclusively on jurisprudence grounded in equitable restitution?

## STATEMENT OF THE CASE

The Consumer Financial Protection Bureau ("CFPB") and State-Appellees filed suit against Defendants, alleging that certain business practices of Appellants were deceptive, misrepresentative, or otherwise unfair. JA0041-JA0057. Government Litigants sought to, "enjoin [Appellants] from making material misrepresentations, omitting material terms in representations to consumers, materially interfering with consumers' ability to understand terms or conditions of their offers of credit, and engaging in all other deceptive, abusive, and unlawful conduct alleged in the Complaint[;]" and sought "damages, restitution, [] other monetary relief,[] disgorgement of or compensation for unjust enrichment[,]" various statutory penalties, costs, an accounting, and "additional relief as the [Trial] Court may determine to be just and proper." JA0081-JA0082.

Corporate Appellants[1] charged fees for securing the release of desperate immigrants from federal detention centers. JA0036, JA0041-JA0042. Its primary customers were immigrant-detainees' friends and families who could not afford the average cost of a cash bond. *Id.* Corporate Appellants offered to "securitize" bonds as well as to indemnify sureties who ultimately issued the bonds, JA0036; Corporate Appellants did not issue the bonds, JA0041, but rather acted as an intermediary between consumers and sureties. JA0042.

Corporate Appellants required consumers to sign various agreements over the course of years, the Complaint identifies *only* two an "Original Agreement," used between 2014 and late 2017, JA0042, and a "New Agreement" beginning in late 2017 or 2018. JA0049. The Original Agreement appears to have plagiarized language from contracts for the provision of electronic monitoring where such has been court ordered. *See* JA0045-JA0047. This, it was alleged, could have led to a false impression that a failure to abide by the terms of the agreement could have led to detention or other negative consequences. JA0046. The Original Agreement was primarily drafted in

---

[1] For the sake of brevity and simplicity, Appellants refer to the acts of Libre by Nexus, Inc. ("Libre") and Nexus Services, Inc. ("Nexus" and together with Libre "Corporate Appellants") together. The Complaint alleged that Libre substantively undertook the course of conduct complained of and that Nexus assisted Libre in taking that course of conduct, thereby becoming liable for the same. JA0060. This was not challenged below due to the entrance of a default judgment as a sanction. JA1209.

English and provided a single page summary of its terms in Spanish, which did not translate the amount of required monthly payments. JA0049.

The Original Agreement utilized a risk assessment score and required all consumers to wear a GPS device. JA0047. Likewise, it required certain additional obligations, such as sobriety, a reporting-requirement, maintaining employment, making payments to bondsmen, and curfew. *Id*. Despite representing that some of these requirements were required by the bail bondsman, it was alleged that such was not the case. *Id*. Corporate Appellants did not enforce various consumer obligations, such as participation in mental health treatment. *Id*.

Corporate Appellants' GPS devices in some cases malfunctioned and after transitioning to the New Agreement in late 2017 or early 2018, which did not require GPS monitoring, Corporate Appellants ceased paying for monitoring software in March 2018. JA0048-JA0049. Pursuant to court order, and due to contractual difficulties, Corporate Appellants ceased utilizing GPS Monitors.[2] JA0051-JA0052. The New Agreement did not require all consumers to make GPS monitoring payments but rather created a fee schedule of program fees based on the amount of the bond:

---

[2] A public statement failed to note the motivation for the change in practice relating to GPS devices. JA0052.

| Amount of Bond | Monthly Program Fees | Number of Payments | Total |
|---|---|---|---|
| Up to $4,999 | $250 | 22 | $5,500 |
| $5,000-$7,499 | $350 | 22 | $7,700 |
| $7,500-$9,999 | $375 | 24 | $9,000 |
| $10,000-$14,999 | $450 | 34 | $15,300 |
| $15,000-$19,999 | $450 | 40 | $18,000 |
| $20,000 and Up | $475 | 60 | $28,500 |

JA0049.

After full payments of the Program fees, a monthly maintenance fee of $50 was required under the New Agreement until the bond was cancelled. *Id.* Corporate Appellants also offered various services to consumers including assistance in various situations and referrals to two affiliate law firms. JA0050.

Collateral payments could be made under either the New Agreement or Original Agreement and those were refundable. JA0044, JA0049. Corporate Appellants failed to properly track some refundable collateral payments leading to failures to provide refunds or delayed refunds in some instances, and in general record keeping was suboptimal. JA0045, JA0055-JA0056.

Additionally, Corporate Appellants provided commission-based incentives, *i.e.*, Libre representatives would earn money in addition to their base salaries based on

consumer contracts executed. JA0053. The Complaint alleges that such performance incentives encouraged deceptive sales practices. *Id.* Additionally, the Complaint alleges that at various times scripts were not utilized, that training was sub-optimal, and that due to a lack of full understanding of contracts call-center representatives could not provide advice, relating to contractual provisions, to consumers. JA0053-JA0054.

Many consumers failed to honor their payment obligations and thus substantial debts were owed to Corporate Appellants for delinquent payments. JA0054. Corporate Appellants attempted to collect debts and the Complaint alleges that representatives made various representations which were inaccurate, unlikely, or threatening. JA0054-JA0055.

Corporate Appellants, after receiving payment, would ensure the detainee's release and would pick up the detainee from a detention center providing guidance, food, transportation, and assisting in reunifying the detainee with his or her family. JA0042-JA0043. During this initial process the detainee was presented with an agreement and the same would be signed. JA0043. Under the Original Agreement, payments of $420 per month were to be made. JA0044.

Corporate Appellants, despite providing a written agreement which notes the nature of the monthly payments, did not orally explain the purposes of the monthly payments, "leading consumers to reasonably believe [] they owe[d] a debt to [Corporate Appellants]." JA0043, JA0048 (noting language in contract), JA0049 (same), JA0057.

Indeed, many consumers misunderstood the nature of the transaction and the contract that they had executed; many consumers apparently did not read the contracts. *Ibid.*

Corporate Appellants at the time of suit, had three shareholders who were individually sued and who the Complaint alleged were aware of the various practices of Corporate Appellants. JA0057-JA0059

Count one alleged that Libre and Individual Appellants[3] made deceptive statements relating to the payment of consumers bonds, JA0061-JA0062; count two alleges that Libre and Individual Appellants made deceptive statements relating to the possibility of detention, deportation, or re-arrest, JA0062-JA0063; count three alleges that Libre and Individual Appellants made deceptive statements relating to the possible referral to debt collectors, JA0063; count four alleges that Libre and Individual Appellants made deceptive statements relating to the possible referral to credit bureaus damaging to credit, JA0063-JA0064; count five alleges that Libre and Individual Appellants made deceptive statements relating to the possible suit for outstanding payments, JA0064; count six alleges that Libre and Individual Appellants made deceptive statements relating to the functionality of GPS devices, JA0065; count seven alleges that Libre and Individual Appellants made deceptive statements relating to refund of

---

[3] Appellants refer to Mr. Moore, Mr. Ajin, and Mr. Donovan collectively as "Individual Appellants."

collateral payments, JA0065-JA0066; count eight alleges that Libre and Individual

Appellants made deceptive statements relating to the likelihood of the provision of legal

services through affiliated law firms, JA0066; count nine alleges that the use of English-

language *Original Contract* was abusive because Libre knew many clients could not read

English, JA0067; count ten alleges that Nexus and Individual Appellants provided

substantial assistance in all of the above, JA0067-JA0069; counts eleven through

seventeen are state, statutory, consumer-protection causes of action. JA0069-JA0080.

All of the above were ultimately treated as admitted for purposes of liability. *See*

JA1209-JA1210 (entering default judgment). On May 11, 2023, the Trial Court entered a

default judgment as a first-instance sanction for discovery violations; prior to this no

other sanction was ordered by the Trial Court. JA1206-JA1207 (noting the court had

ordered no other sanction in the case). Before the entrance of default, many of the

Appellants' legal arguments were not substantively heard; for instance, Appellants

moved to dismiss the action under FRCP 12(b)(1), arguing primarily that they did not fall

under the ambit of the CFPA because they did not offer any services that were financial

in nature and thus could not be considered a "covered person." *See generally* JA0087,

JA0092-JA00104.[4] The Trial Court recognized that Appellants' counsel was mistaken in

---

[4] Although, not particularly relevant to a motion to dismiss for lack of subject matter jurisdiction or this appeal, Appellants also argued that prior arbitrations had found their business practices to be neither fraudulent nor deceptive. JA0090-JA0091

bringing the motion as one to dismiss for lack of subject matter jurisdiction but refused to construe the motion as one to dismiss for failure to state a claim. JA0287. The Trial Court never substantively addressed whether Appellants were "covered persons" because such was not of jurisdictional significance. JA0291.

Ultimately, the default was entered based on a single discovery dispute; Government Litigants filed a statement regarding a discovery dispute, largely concerned with document production. JA0295-JA0325.[5] Government Litigants requested sanctions under Rule 37 compelling the production of documents and an award of fees and costs. JA0296. In effect, Government Litigants stated that they had participated in a lengthy meet and confer process, with Appellants' then-current counsel Adam Bowser, of Arent Fox, that reached an impasse on March 22, 2022, leaving Government Litigants with no choice but to file their discovery dispute on May 4, 2022,[6] which sought production of documents. JA0296-JA0298.

––––––––––––––––––––––

[5] Although, Magistrate Judge Hoppe also addressed the non-representations of *Corporate Appellants*, and did suggest entrance of default should *Corporate Appellants* fail to retain counsel, JA1110-JA1111, Corporate Appellants retained counsel shortly prior to the final hearing with the Trial Court relating to sanctions, JA1143 (granting *pro hac vice* motion morning of sanctions hearing), and it does not appear that the default judgment was based on the lack of counsel which was in any event cured. *See generally* JA1204-1207 (focusing on discovery dispute).

[6] It took approximately one year for this dispute to be scheduled for a hearing in front of Judge Dillon. JA1112.

Thereafter, Magistrate Judge Hoppe ordered for position statements to be filed, which Appellants and Government Litigants timely did on May 20, 2022. *See, e.g.*, JA0763-JA0764. Appellants' response primarily provided context and explained why Appellants' counsel determined it would be inappropriate to include additional sections within the Government Litigants' briefing. JA0766 (noting non-compliance with discovery order and that only chart was permitted under order). A telephonic conference was held relating to the discovery dispute; during that proceeding, both counsel put forth their various positions and articulated their positions fully and apparently in good faith, JA0960-JA0967—Magistrate Judge Hoppe never articulates doubt as to the legitimacy of the positions taken by parties in his *post*-conference order or the hearing. *See, e.g.*, JA 0950, JA0964-JA0966 ("Mr. Bowser I think the things you proposed are important and certainly warrant discussing . . ." "Mr. Bowser, . . . I think what you've laid out, it sounds reasonable . . ." ). Indeed, Magistrate Judge Hoppe found neither fees nor sanctions appropriate. JA0859.

Approximately two weeks after this conference, Appellants' attorneys began to withdraw. *See, e.g.*, JA0863 (noting the withdrawal of Mr. Bowser as well as co-counsel). Government Litigants vigorously opposed the withdrawal of counsel noting that it would leave Appellants without counsel and would cause delays. JA0864-JA0869. Further, Government Litigants relayed that Appellants counsel had previously taken part in "infighting" and potentially failed to transfer records to incoming counsel. JA0866.

Counsel for Appellants filed a reply to this opposition on July 7, 2022, noting that there existed a serious payment issue, JA0874-JA0876, shortly followed, on July 19, 2022, by the request for an order to show cause that would lead to the entrance of a default judgment. JA0878-JA0949.

This motion sought the issuance of an order to show cause why defendants should not be held in contempt of court under Rule 37; sought certification of various facts and findings under 28 USC 636(e)(6)(B)(iii); a continuance of discovery and other deadlines of nine months, and fees. JA0878-JA0879. It did not seek either evidentiary sanctions or default. *Ibid.* Additionally, it did not discuss the possibility of default. JA0878-JA0949. The memorandum states explicitly "dismissing the action is clearly inapposite" and concludes that contempt is the least severe sanction that would be effective, JA0890-JA0891, it outright rejects the entrance of either the entry of default judgment or evidentiary sanctions as being *too* severe. *Ibid.*

On August 23, 2022, and September 26, 2022, Government Litigants filed two supplemental declarations in essence stating that discovery obligation had not been met; neither of these declarations nor the reply memorandum details jurisprudence addressing the entrance of a default judgment or the need for the same. JA0978-JA0988, JA0992-JA0993. Prior to his withdrawal, counsel for Appellants, Adam Bowser, filed an additional declaration detailing steps taken to comply with discovery obligations, as well as declaration of Mr. Ajin detailing that he delivered ESI to the offices of the CFPB.

JA0995-JA1000. A third supplemental declaration was filed on January 6, 2023, by the Government Litigants detailing perceived deficiencies with the discovery, which was being produced, but again never discussing the entrance of a default sanction. JA1001-JA1007.

While this motion for an order to show cause was pending on January 11, 2023, the leave for withdrawal of Appellants' counsel was granted. JA1080-1082. During this period, between January 11 and the ultimate hearing on April 17, Appellants were unrepresented and missed deadlines. JA1134-JA1136 (complaining of Appellants failures during the period where they were without counsel and complaining of the lack of counsel).

On February 7, 2023, Magistrate Judge Hoppe issued two orders to show cause, the first relating to the discovery dispute, which certified facts relating to civil contempt and the finding of civil contempt. JA1083-JA1111. This order recommended a daily fine of $1000 (less than the $5000 requested) from the Corporate Appellants and a daily fine of $500 per day from the Individual Appellants as well as an award of attorneys' fees and costs under Rule 37. JA1083-JA1109. The Order did not address or suggest either a default sanction or an evidentiary sanction, nor hold such was necessary, nor that it was the least severe sanction that may have led to compliance. *Ibid.*

The second order to show cause, required the Corporate Appellants to show cause why the Trial Court should not sanction the Corporate Appellants, including entrance of a

default judgment against Corporate Appellants, for failing to retain counsel. JA1110-JA1111. The Trial Court ordered for the show cause hearings on both orders to show cause to occur on April 17, 2023, and set forth a briefing schedule on March 14, 2023; at this point Appellants were unrepresented. JA1112-JA1113. The Trial Court did not note the possibility of default for any discovery sanction, but rather references contempt and Magistrate Judge Hoppe's order to show cause referencing contempt, JA112, and notes the other show cause referencing the possibility of default for Corporate Appellants for failing to retain counsel. *Id.*

For the first time, on April 3, 2023, Government Litigants, in a supplemental response brief, requested the entrance of a default judgment and requested that the Trial Court re-interpret its previous filing as a motion for entry of default. JA1114-JA1115. It is not clear whether or not this request was based on the order to show cause relating to discovery or the order to show cause relating to a failure to retain counsel; the brief shifts back and forth rapidly from discovery failures to failure to retain counsel. *See, e.g.*, JA 1120 (arguing discovery failure); JA1121 (arguing failure to retain counsel). It appears that Government Litigants sought the same based on the Trial Court's inherent authority, but also briefed Rule 37, and requested that their prior motion, based on discovery failures, be construed as a motion for default sanctions; they cited no authority allowing this *post-hoc* reinterpretation of a motion that explicitly rejected default as being in appropriate based on a request made in a supplemental response brief. JA1114-JA1115,

13

JA1117-JA1130. The argument relating to availability of a lesser sanction appeared based on the failure to retain counsel and the fact that appellants had failed to participate in litigation without counsel. *See, e.g.*, JA1123-JA1124.

On the same day, Government Litigants submitted another declaration that detailed a failure to produce discovery, to retain counsel, and to appear at a status conference since the loss of counsel. JA1134-JA1136. The declaration did not set forth any facts relating to the necessity of the entrance of default, specifically, nor any fact relating to the availability of a less severe sanction. *Id.*

All of this was done in a supplemental response briefing of their prior motion; no new or independent motion was made. JA1114-JA1136. Additionally, during this time, Appellants had no notice whatsoever that they were to be made subject to an injunction wildly broader than that requested in the Complaint. *Compare* JA0081-JA0082, *with* JA1700-JA1703, JA1709-1718. Individual Appellants had *no* notice of the possibility of facing default sanctions prior to the filing of this supplemental response brief and Corporate Appellants had no notice that they might face default sanctions for discovery failures prior to the supplemental response brief.[7]

---

[7] These filings were served by mail. JA1133, JA1137.

Nothing in the record demonstrates that the delay between the initial discovery dispute conference on June 6, 2022 and the ultimately scheduled hearing on the matter on April 17, 2023, was the result of anything but the Trial Court's choice in scheduling; the orders to show cause issued on February 7, 2023, and although Appellants failed to file *pro se* briefings and to retain counsel until shortly before the April 17, 2023 hearing, the hearing occurred as initially scheduled by the Trial Court. *See generally* JA1080-JA112 (orders and orders to show cause demonstrating no modification in scheduling); JA1161 (hearing occurring as scheduled by Trial Court on April 17, 2023).

Appellants retained *pro hac vice* counsel and local counsel who made their appearance and immediately requested a short continuance on the hearing for the failure to retain counsel order to show cause and a motion for leave to file a response to that order to show cause and the supplemental response brief. JA1145-1160. Appellants requested that the Court adopt the relief proposed by Magistrate Judge Hoppe as to the order to show cause relating to discovery sanctions. JA1145-JA1146.

This motion was briefed, and it noted the fact that entering default sanctions in the first instance was highly unusual, that the notice of default only appeared in a response brief, that default for failure to retain counsel when counsel had been retained would be drastic, and that the entrance of unbriefed defaults—especially now that counsel had appeared—appeared much less preferable than allowing for a short continuance. JA1148-

JA1154. Further, the short delay would either demonstrate that the *Wilson*[8] factors had

been met or could not be met, and thus would either show that a default sanction was

appropriate or inappropriate. JA1154-JA1156.

This motion was denied and the hearing proceeded, wherein Appellants' counsel

was permitted to argue orally, but warned in somewhat strong terms that the Trial Court

did not approve of certain tics of his speech: his use of the verb "believe" and "feel" were

not appreciated by the Trial Court.[9]

During the hearing, Appellants' counsel broached both the oddity of a first-

instance default sanction and the *de minimus* prejudice that would be present if a small

continuance was granted. JA 1169-JA1170. Additionally, he addressed arguments made

by Government entities, based primarily on *Richards*.[10] JA1184-JA1185. Appellants'

---

[8] *Wilson v. Volkswagen of America, Inc*., 561 F.2d 494 (4th Cir.1977), *cert. denied*, 434 U.S. 1020 (1978)

[9] In addressing the Trial Court, possibly in an idiom not in common usage in the locality, counsel utilized the verb "believe," and "feel" to express assertions that were in fact true, *i.e.*, "I believe it addresses *Pioneer Investment Services*[;] I believe it addresses heightened scrutiny. . . [;] I believe it addresses  Rule 6(b)(2)(B)[.]" *Compare* JA 1175, *with* JA1151-JA1153 (addressing just those things). Counsel's language apparently caused some consternation. JA 1173 (interrupting after the word "belief"), JA1175 (cautioning use of the word "believe" and remonstrating after use of the word "feel.")

The argument did not facially appear unprepared or otherwise inappropriate and indeed tracked briefing quite well. *See, e.g.*, JA1169; *see also* JA1152.

[10] *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc*., 872 F.2d 88 (4th Cir. 1989).

motion for continuance was denied; it does not appear that the Trial Court considered the

papers nor applied the factors which counsel attempted to argue, but rather based its

decision on the number of days during which Appellants were without counsel. JA1178-

1179.

> I deny the motion for a continuance. The hearing is today. It's been scheduled for some time. This case has been going on for a long time. As I already noted, defendants were on notice that counsel, their prior counsel, which was their second round of counsel, they were on notice at least as of June 23rd that their prior counsel was going to withdraw, and that counsel represented that defendants had agreed to secure substitute counsel. It's been at least -- so that's 298 days. It's been at least 96 days since prior counsel officially withdrew, the order was granted, and 82 days since the entity defendants were required to retain counsel. I believe they were given 14 days to do that.
>
> So I find prejudice to plaintiffs. I don't find excusable neglect under Rule 6(b) of the Federal Rules of Civil Procedure. I have not heard any grounds -- legitimate grounds for the reason for the delay, and I don't find that the motion is made in good faith. So for those reasons, the Court denies the motion for a continuance.
>
> *Id.*

Government Litigants relied on *Richards*, *Shaffer*, and *Dyncorp* to argue that

default was appropriate; additionally, *Wilson* was mentioned in closing without any

argument other than they relied on the same:

> [W]e think each case, either *Dyncorp*, Your Honor, or *Richards*, under inherent authority with *Dyncorp* or under *Wilson* with *Richards*, that the Court has ample authority to enter default today. And I'm happy to answer any questions that the Court may have.
>
> JA1183.

The Trial Court allowed Appellants' counsel to argue orally. JA1184. He noted various perceived flaws in Government Litigants' argument. JA1184-JA1187. First, he noted *Wilson*, did not involve a simple balancing test, but rather a four-factor test where each factor had to be met. JA1184. He further pointed to the importance of the availability of a less drastic sanction under *Wilson's* factor-based test. *Id.* He went on to distinguish the facts in *Richards*. JA1185-JA1187. He additionally noted that what Government Litigants argued had not been produced personal financials, did not go to the heart of proving the case, but rather damages.[11]  JA1186. He noted that in each of the cases cited by Government Litigants there was a "ratcheting up" of sanctions and a clear showing from those previous sanctions that no less severe sanction would effect compliance, JA1187, and that there was a lack of notice for the discovery based sanctions where there had been little chance to respond. JA1170-JA1171, JA1187.

The Trial Court ultimately considered, explicitly, only the imposition of a lesser monetary sanction—never addressing evidentiary or other sanctions—and determined

---

[11] The Government Litigants ultimately had no issue regarding documentation relating to monetary penalties and restitution and on those documents received monetary relief in excess of $800,000,000.00. JA1703-JA1708 (requiring payment of $230,996,970.84 in ten days by wire to CFPB; ordering payment of from each separate defendant of $111,135,620.00 in ten days by wire to CFPB; ordering payment of $7,100,000.00 to Virginia in ten days by wire; ordering payment of 3,400,000.00 to Massachusetts in ten days by wire; ordering payment of 13,890,000.00 to New York in ten days by wire).

18

based on conduct outside of the case that default was appropriate. JA1207. The Trial

Court found that all other *Wilson* factors had been met. JA1203-1207. The Trial Court did

not examine the unusual nature of the notice or whether that afforded adequate

opportunity to cure. JA1201-JA1207.

The clerk was directed to enter a default judgment and did so. JA1209, JA1211.

The operative scheduling order on briefing, witness lists, exhibit lists, and trial was

set on June 13, 2023. JA 1219-JA1220.

Government entities trial brief sought additional discovery sanctions, specifically

sanctions barring the presentation of virtually all evidence and witnesses except for those

set forth in initial disclosures, made on July 22, 2021. JA0661-JA0663, JA 1223-JA1236.

Much of the rest of their brief focused on liability. *See, e.g.*, JA1237-JA1256. Beyond

this, Government Litigants set forth "injunctive relief sought by [Government Litigants] .

. . [i]n particular [Government Litigants] request that the Trial Court:"

- Enjoin Defendants from making material misrepresentations or omissions with respect to the nature and scope of the services provided by Defendant Libre, including misrepresentations regarding whether payments are applied to the consumers' immigration bonds, Libre's affiliation with ICE, and the provision of legal services to consumers. Defendants' misrepresentations form the factual basis for Counts 1, 2, 8, 9, 10, 11, 12, 13, 15, and 17 of the Complaint.

- Require Defendants to provide all consumers and prospective consumers with clear and accurate contracts, presented in a language accessible to the consumer, that include conspicuous disclosures of the fees charged by Libre and advising consumers that Libre will not report consumers to law enforcement for non-

payment of fees or non-compliance with the contract. These requirements would prevent Defendants from harming consumers through misleading and abusive contract terms as set forth in Counts 1, 2, 9, 10, 11, 12, 13, 15, 16, and 17.

• Enjoin Defendants from requiring GPS monitors as a term of any consumer contract. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.

• Enjoin Defendants from collecting any payments related to GPS monitors. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.

• Enjoin Defendants from collecting monies in connection with the Original Agreement, from collecting monies not owed, and from retaining money owed to consumers, as set forth in Counts 1, 7, 9, 10, 11, 12, 13, 14, 15, and 17.

• Enjoin Defendants from making material misrepresentations with respect to non-payment of fees or non-compliance with the contract, including misrepresentations regarding selling consumers' debt, as set forth in Counts 3, 10, 11, 12, 14, 15, and 17; misrepresentations regarding providing negative information to credit reporting agencies, as set forth in Counts 4, 10, 11, 14, 15, and 17; and misrepresentations regarding bringing debt collection actions against consumers, as set forth in Counts 5, 10, 11, 14, 15, and 17.

• Enjoin Defendants Nexus Services, Inc., Micheal Donovan, Richard Moore, and Evan Ajin from engaging in or providing substantial assistance to any deceptive or abusive acts or practices by Defendant Libre, as set forth in Count 10.

JA1259-1260.

Appellants had no notice that other injunctive relief would be sought when they drafted a response brief and thus did not oppose the injunctive relief set forth in the Government Litigants' Brief. *See* JA1469-JA1497.

Primarily, Appellants focused on the severity of a repeat sanction, *see, e.g.*, JA1474-JA1475 (noting the sanction would moot the need for any trial on damages and

effectively foreclose Appellants from contesting damages), JA 1491-1497. Government Litigants despite having requested reinterpretation of their previous request for Rule 37 sanctions, JA1118 (requesting that original motion explicitly rejecting default be construed as a request for default), argued for yet mor sanctions in their trial briefing. JA1322-1236.

Appellants opposed this because sanctions had already been imposed, JA 1492, and additionally on the fact that no disclosures were due because the scheduling order was based on the date of trial and the same had been vacated, *id.*, as well as various legal theories. 1493-1497.

Finally, Appellants argued that the revenue-based calculation is only appropriate in some cases, *i.e.*, where consumers lose more than a company has gained and that the same is inappropriate where the initial burden cannot be met—where it is not demonstrated that the net revenues is a fair approximation of consumer loss. JA1477-JA1488. Relying on the Complaint, Appellants argued that consumers received the very thing they sought and the very thing they were desperate for: freedom from government detention. JA1481-JA1482. Thus, it was argued that the damages calculation should be based on actual consumer loss, *i.e.*, the amount required to make the consumer whole given whatever showing of actual loss the Government Litigants could make. JA1480-JA1482.

Ultimately, the Trial Court barred presentation of all witnesses but one and barred all exhibits, JA1612. The Trial Court did so based on prior failures of Appellants, while appreciating efforts of counsel after their entrance in the case. JA1609.

A hearing was ultimately, as predicted in briefing, not necessary given the bar to presenting evidence, and a judgment and orders were entered in the case—those were then amended. *See* JA1669-JA1749.

After the entrance of judgment, on May 28, 2024, Government Litigants noted the existence of a proposed judgment, JA1909, which would later appear in the record for the first time on June 28, 2024.[12] Appellants' counsel did not recall the existence of the same proposed order and could not recall seeing it in the record or any paper prior:

> The only other thing I would mention as to the proposed order or the relief requested by the CFPB, very possibly I completely missed that, but I don't recall it being mentioned in the opposition. I don't recall it being filed in the docket. Potentially I was attached on these emails but I certainly do not remember seeing them. []As far as I was aware, the CFPB requested the relief it wished to have in its complaint and in its trial brief . . .
>
> JA1917-JA1918.

---

[12] Such was not provided to the Trial Court at the Trial Court's request, but rather gratuitously offered *after* all briefing was concluded in the matter. JA1925-JA1926 (providing proposed order apparently on July 25), JA1219 (providing final briefing of Appellants on July 14 and final briefing of Appellees on July 21).

## SUMMARY OF THE ARGUMENT

Appellants arguments are not particularly complex. Briefly, Appellants argue that *every* injunction needs to comply with the mandates of Rule 65(d) and that compliance with Rule 65(d) is neither optional nor waivable. *See Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) (holding compliance with Rule 65 is mandatory for *every* injunction). Because the Trial Court's injunctive relief in this case is significantly broader than that requested, briefed, and wholly disproportionate to the harms pleaded, it is overly broad. *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1267 (4th Cir. 1971) (holding injunction must be narrowly tailored to remedy no more than reasonably required to redress wrong complained of). Additionally, due to the overbreadth interpretation of the injunctive provisions is exceeding difficult made all the more difficult because certain key terms are not defined, leaving the injunctive provisions impermissibly vague. *CPC Int'l, Inc. v. Skippy Inc.,* 214 F.3d 456, 459 (4th Cir. 2000). Finally, as to the injunction, the above (as well as internal cross references and references to the complaint) make it near impossible to understand the Trial Court's specific reasoning for issuing any particular provisions or the provisions in whole. *See Alberti v. Cruise*, 383 F.2d 268, 271-72 (4th Cir. 1967). In short, it violates literally every subsection of Rule 65(d)(1).

Additionally, Appellants argue that granting a first-instance default sanction where insufficient notice was given, that did not afford an opportunity to cure, is impermissible

and that entering preclusive sanctions after the entrance of a default sanction was an abuse of discretion given the unique facts present in the case. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40-41 (4th Cir. 1995) (reversing default sanction that may have been otherwise justified because of lack of notice and time to cure).

Beyond the above, Appellants argue that while a court may permissibly order legal restitution under the CFPA, it is functionally the same as a damages, and thus requires the damages to reasonably relate to customer loss. In the instant matter, the lower court either impermissibly granted equitable relief based solely on jurisprudence with equitable foundations or failed to ensure that its damage calculation reasonably related to actual consumer loss. *See CFPB v.Consumer First Legal Grp., LLC*, 6 F.4th 694, 711 (7th Cir. 2021) ("*Consumer First*").

## **ARGUMENT**

I.    **EVERY INJUNCTION MUST COMPLY WITH FEDERAL RULES OF CIVIL PROCEDURE RULE 65(d) AND THE TRIAL COURT ERRED BY ENTERING AN INJUNCTION THAT FAILED TO COMPLY WITH RULE 65(d).**

### A. **Standard of Review**

This Court reviews *de novo* whether or not an injunction complies with Rule 65(d). *See Hawkins v. i-TV Digitalis Tavkolesi zrt*, 935 F.3d 211, 226-27 (4th Cir. 2019); *Scott v. Clarke*, 852 Fed.Appx. 727 (4th Cir. 2021) (citing *Hawkins*, 935 F.3d at 226-27). The "requirements of 65(d) are *mandatory* and must be observed in *every instance*." *Thomas*, 810 F.2d at 450 (4th Cir. 1987) (emphasis added); *Alberti*, 383 F.2d at 271-72. A failure

24

to raise challenges based on 65(d) does not result in waiver. *See Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 273 (4th Cir. 2003) (collecting cases and holding party "did not waive its challenge to the scope of the injunction by failing to raise it" and remanding to lower court to reconsider the scope of injunction). The provisions of Rule 65(d) are not simply technical niceties but rather are required both to facilitate due process and appellate review. *CPC Int'l, Inc.,* 214 F.3d at 459.

## B. <u>The Trial Court's Injunction Violates Rule 65.</u>

Appellants' argument surrounding the infirmity of the Trial Court's injunction on its face is quite simple: the injunctive relief granted in this case fails to comply with the mandates of Rule 65(d). First, a party is left to guess the meanings at certain provisions because they either contain key terms that are not defined—it is vague; second, the scope of the injunction is wildly broader than the wrongful conduct complained of or relief requested and enjoins a wide variety of perfectly legal behavior; third, given the ambiguous nature and the broad scope the reasons for its provisions and issuance are simply not clear and it fails to adequately describe what is enjoined. *See* JA1672-1718.

### 1. *The Injunction Is Impermissibly Broad.*

Injunctions must be narrowly tailored to the wrongs complained of and cannot enjoin legal activities or activities unrelated to the wrongs complained of. *Lowery v. Cir.*

*City Stores, Inc*., 158 F.3d 742, 767 (4th Cir. 1998), *cert. granted, judgment vacated on other grounds*, 527 U.S. 1031 (1999). Indeed, even when an injunction bars illegal activities, such is impermissibly broad where the enjoined behavior is unrelated to past wrong shown; there needs to bear a strong resemblance between the activities complained of and the acts enjoined, regardless of the legality of those acts:

> [T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged ... To justify an order restraining other violations it must appear that they bear some resemblance to that which the [wrongdoer] has committed ....

*National Labor Relations Board v. Express Publ'g Co*., 312 U.S. 426, 435-36 (1941) (hereinafter "*NLRB*").

In essence, it is this concept that bars the "sin no more" injunction, *Lowery*, 158 F.3d at 767 (hyphens omitted), and bars sweeping injunctive relief which would prevent a person from taking otherwise legal actions (even where those actions constitute an element of the underlying offense). *Id.* at 768 (noting the absurdity of barring all adverse actions against black employees, such would by its nature bar "indisputably" legal actions.)

A permanent injunction will be found to be overly broad where it exposes a party to contempt proceedings for "acts unrelated to those originally judged unlawful[,]"

26

whether or not those unrelated acts are illegal. *Lineback v. Spurlino Materials*, LLC, 546 F.3d 491, 504 (7th Cir. 2008) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004)); *accord Lowery*, 158 F.3d at 767.

First, Appellants would argue that *all* injunctive relief beyond that requested, and briefed, was not justified; the need for it was not demonstrated and it did not reasonably relate to either the wrongs addressed or those set forth in the Complaint. The Government Litigants specified the relief they believed necessary and all provisions beyond the same should be considered beyond what was necessary and overly broad. *See* JA1259-JA1260 (requesting injunctions that actual bear resemblance to the acts complained of).

To the extent the injunction seeks to bar transfer of customer information, this clearly does not relate to the wrongs complained of. To the extent the injunction bars sale of assets, such clearly does not relate to the wrongs complained of. To the extent the injunction attempts to force third parties, through various acknowledgements and requirements of reporting to be subject to contempt, this is likewise wildly beyond the scope of what was complained of. To the extent that the injunction seeks to affect transactions wholly unrelated to the Original Agreement or New Agreement (the complaint addresses two contracts and those contracting practices) the injunction is likewise overly broad in that it restrains acts that have nothing to do with those contracting practices. To the extent the injunction attempts to replace normal discovery

27

practices and require the production of arbitrary information unrelated to the acts

complained of the injunction is overbroad.

To be specific, Appellants are addressing paragraphs 14(a)-(c) (essentially a sin-no-

more injunctions); 15 (a sin-no-more injunction); 16 (barring legal behavior—the

complaint involved deception relating to the functionality of GPS devices; contracting to

wear a GPS device is completely legal); 17 (wildly over broad in that it is not limited by

the Original Agreement or New Agreement); 18(c), (d) (not limited to misrepresentations

and there are circumstances where re-arrest could occur due to breaches in bond

conditions); 19 (enjoins a great deal of legal behavior that has nothing to do with

misrepresentations to customers that signed either the Original Agreement or New

Agreement); 51 (simply has nothing to do with wrongs complained of); 54 (overly broad

and vague); 55 (has nothing to do with the acts complained of); 56 (same); 57 (overly

broad in that it incorporates overly broad provisions); 60 (encumbers parties who had

done nothing wrong and exposes them to contempt); 61 (same); 62 (same); 63 (overly

broad in that it incorporates overly broad provisions); 64 (overly broad and has nothing to

do with wrongdoing in complaint); 65 (overly broad in that relies on overly broad

provisions); 66 (same); 67(same); 68 (overly broad because of definition of "Affected

Consumer"); 69 (impermissible incorporation of outside document); 71 (overly broad and

in no way limited);  75 (overly broad in that it encumbers an otherwise legal sale and fails

28

to define what provisions are "applicable" thus likely incorporating overly broad

provisions). JA1672-JA1693.

Because of the myriad problems, this Court should either strike the injunction *in toto* with direction that the Trial Court enter a more narrowly tailored injunction or in the alternative simply adopt the relief initially requested in the Government Litigants briefing which did not suffer from the same wild overbreadth. The above problems are compounded by definitional problems discussed below, particularly in that the injunction affects all transaction whether or not they involved the Original or New Agreement; particularly the definition of "Effective Date," "Affected Consumer," "Nexus Immigration Bond Services," are problematic in both their scope and their reference all reaching back into the Complaint. *See* JA1672-JA1674.

### 2. *The Injunction Is Impermissibly Vague.*

The Fourth Circuit like the Supreme Court requires injunctions to be drafted so that those who must obey them will know clearly what they do and do not forbid. *See Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76 (1967) (hereinafter "*Longshoremen*"); *see also CPC,* 214 F.3d at 459.

"[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *Diapulse Corp.*

*of Am. v. Carba, Ltd.,* 626 F.2d 1108, 1111 (2d Cir. 1980) ("It is for this reason that Fed. R. Civ. P. 65(d), like its predecessor 28 U.S.C. § 383, provides that every order granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained. An order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny.").

Incorporation of documents outside an injunction will make it impermissibly vague. *See Thomas,* 810 F.2d at 450. Likewise, usage of language which is simply not clear or definite is fatal and an injunction will not be held enforceable. *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995); *see also, Scott v. Clarke*, 355 F.Supp.3d 472, 492-93 (W.D.Va. 2019)*, aff'd* 852 Fed.Appx. 727 (4th Cir. 2021); *CFPB v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) (*"*A party cannot be held in contempt for violating an ambiguous court order."). In essence, where there are multiple good faith interpretations, an injunction is highly problematic. *Id.*

The Fourth Circuit appears to utilize norms of statutory and contract interpretation to interpret injunctions. *See generally CFPB*, 957 F.3d 463-464 (utilizing norms of contract interpretation for consent order in the context of contempt).

For this reason, the injunction should be interpreted as a whole. *See Graham Cnty. Soil and Water Conserva. Dist. v. U.S. ex rel. Wilson,* 559 U.S. 280, 290 (2010) (holding courts have a duty to avoid interpreting provisions in isolation) (citing *Gustafson v.*

*Alloyd Co.,* 513 U.S. 561, 568 (1995)). One cannot simply remove portions of the injunctive provisions and examine them in isolation, but rather must consider how the injunctive relief acts *in toto* to reach a meaningful interpretation. *Id.* Further, to the extent possible an injunction's provisions should be read in harmony and to not contradict with one another. *See Speaks v. U.S. Tobacco Coop., Inc*., 31 F.4th 838, 843 (4th Cir. 2022) (citing *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 259 S.E.2d 248, 251 (1979) and Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 180-182 (2012)). Next, an avoidance principle should be involved, where possible, to make the injunction legal, *i.e*., not violative of either the Constitution or Rule 65, where such is possible. *See, e.g., Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) (noting where multiple constructions are possible the interpretation that would be legal is preferable). Lastly, certain traditional cannons*, esjudem generis, noscitur a sociis, generalia specialibus non derogant, etc.,* should be utilized to allow one to meaningfully interpret particular words based on those around them and to allow one to assume that the broader provisions are not meant to vitiate more specialized provisions. *See generally* Gardner & Scalia*, supra, Reading Law*; *see also CFPB*, 957 F.3d at 464 (utilizing *esjudem generis* for interpretation).

Here, of primary importance is *how* one should interpret certain provisions, while attempting to have them comply with Rule 65, *i.e.*, applying something similar to an

avoidance principle or trying to avoid the absurdity of an illegal or unenforceable injunction.

The injunctive relief here was broader than that requested, *compare* JA1700-JA1703, JA1709-1718, *with* JA0081-JA0082, JA1259-JA1260; moreover, the injunctive provisions apparently enjoin acts and potential acts that were not adjudicated by the Court and prohibit acts that go well beyond the conduct that Plaintiffs argued to be wrongful, and the Court found unlawful; for instance the lawful sale of assets and information. JA1703.

Trying to make this not so, requires very carefully trying to re-interpret ambiguous terms to allow for them to actually comply with Rule 65. That is made all the more complex where one does not know what interacts with what and in what manner.

To begin, one would need to start by creatively interpreting defined terms: "Affected Customer" is overly broad—it does not apparently limit itself to customers who suffered harm or were subject to problematic transaction, or had signed the New Agreement or Old Agreement, but rather any person who consumed or paid for "Immigration Bond Services," another defined term, that in turn references and incorporates the Complaint. JA1672 This is compounded by the definition of "Effective Date" which brings in years of conduct which had nothing to do with the complained of activities. JA1674.

Assuming one could permissibly redefine these terms and to interpret them as not being overly broad and not enjoining perfectly legal behavior and behavior that was not adjudicated, one is left with the problem of key terms simply not being defined, for instance "applicable provisions" within paragraph 75, JA1693, and those provisions seemingly appearing to contradict other provisions—for instance paragraphs 75 (contemplating a sale as permissible if precondition met) and 19 (apparently barring sale of company, or only allowing it if precondition met), or provisions which are simply internally inconsistent or obviously superfluous (paragraph 54 and 56 requiring "notice at least thirty days before a development, but in no case later than 14 days after the development, whichever is sooner"). JA1711, JA1712.

Beyond all of the above, one need to attempt to interpret the injunctive provisions as not prohibiting lawful conduct. *Mallet & Co. v. Lacayo,* 16 F.4th 364, 389 (3rd Cir. 2021) ("The description of the conduct enjoined should be narrowly tailored to reach only those acts that *closely relate to the unlawful conduct giving rise to an entitlement to injunctive relief* ... The injunction order here is problematic *because it extends the scope of the injunction to reach what appears to be lawful conduct."*) (emphasis added); *Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (reversing a preliminary injunction that completely prohibited a competitor from lawfully buying and reselling competing products); *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108,

1113-17 (8th Cir. 1969) (setting aside a preliminary injunction for restraining otherwise lawful activity).

In order, to try to make these ambiguous provisions compliant with Rule 65 one needs to guess at their meaning by narrowing them, where reasonable, and do so only for the provisions that are susceptible to multiple interpretations, *see, e.g.*, *Jennings*, 583 U.S. at 286, it is a herculean task which unfortunately makes clear that the injunction is in the absolute best of the worlds ambiguous to the point of being unenforceable, *CFPB*, 957 F.3d at 464 (*"A party cannot be held in contempt for violating an ambiguous court order."*) (cleaned up), and clearly vague to the point of being non-compliant with the requirements of 65(d)

### 3.  *The Above Problems Create Additional Rule 65 Conflicts.*

The sheer scope of the injunctions and their ambiguous nature lead to additional problems; Rule 65(d)(1) requires an injunction to:

> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

This injunction simply does not. Nowhere is it described why its twenty-pages of provisions are required; nowhere (whether in the Complaint or elsewhere) is it explained

why certain assets cannot be sold and what irreparable harm will result if such is not the case. Nowhere is it explained why transactions, and contracts, never mentioned in the complaint should be burdened. Nowhere does it explain why every party with whom Appellants' contract should be forced to acknowledge the order; nor does it state why reporting of wholly unrelated businesses is required.

There are no reasons for the injunctions' scope, and the constant cross-references, both cross-references internally, and to the Complaint (not even by specifying specific count or page, but just the complaint generally, is endemic. *See, e.g.*, JA1697-JA1699 (definitions cross-referencing one another and the Complaint).

In short, the injunctions many provisions do not clearly express why they have been issued, specifically set forth definite terms, or describe with adequate detail and without reference to the complaint the acts restrained.

## C. <u>Compliance with Rule 65(d) Is Mandatory and Non-Waivable in This Circuit.</u>

An entire corpus of jurisprudence in this Circuit—as well as in the Supreme Court—would be wholly non-sensical were non-compliance with Rule 65 subject to normal preservation and waiver requirements. *See generally*, *CPC*, 214 F.3d at 459; *Thomas*, 810 F.2d at 450; *Alberti*, 383 F.2d at 272; *accord Scott*, 852 Fed.Appx. at 730

(approving of the district court's holding that compliance with Rule 65(d) mandatory in all circumstances and not waivable).

The precedent of this Circuit clearly requires strict compliance with Rule 65(d) in every case and requires an injunction to comply with Rule 65(d) for it to be enforceable. *Thomas*, 810 F.2d at 450; *see also Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013) ("provisions of Rule 65(d) are no mere technical requirements") (quoting *Schmidt v. Lessard*, 414 U.S. at 476); *Smith-Berch, Inc. v. Baltimore Cnty.*, 64 Fed.Appx. 887, 889 (4th Cir. 2003) (*per curiam*). The requirements of Rule 65(d) are "mandatory and must be observed in every instance." *CPC*, 214 F.3d at 459. It would make no sense to bar appeal of a non-enforceable injunction to simply allow contempt proceedings to occur that would be subject to Rule 65(d) arguments and later appeals.

Indeed, where an order is ambiguous or vague a party simply cannot be held in contempt. *See generally CFPB*, 957 F.3d at 464 (holding "party cannot be held in contempt for violating an ambiguous court order . . .") (quoting *Acosta v. La Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018)); *see also generally Scott*, 355 F.Supp.3d at 492, *aff'd* 852 Fed.Appx. 727 (4th Cir. 2021). While this is obviously the law in the Fourth Circuit, *see ibid.*; *see also In re Gen. Motors Corp.*, 61 F.3d at 259 (holding for contempt to lie a party must "point to an order of this Court which 'set[s] forth in specific detail an unequivocal command' which a party has violated") (quoting *Ferrell v. Pierce*, 785 F.2d

36

1372, 1378 (7th Cir.1986)), it is also the law in the Supreme Court. *See Longshoremen*,, 389 U.S. at 76. In explaining why the Supreme Court overturned both the injunction and the contempt, the Supreme Court explained in *Longshoremen*, "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Id.*

This precedent would be completely non-sensical if the mandatory nature of compliance with Rule 65(d) was subject to normal waiver; if it was, every party who failed to appeal an injunction for Rule 65(d) reasons would be later subject to contempt regardless of ambiguity, vagueness, non-specificity, scope, *etc.*, and would most certainly have waived their later argument appealing the contempt for having failed to appeal the injunction in the first instance.

Even in Circuits that have established waiver, such is exceedingly narrow.

There are certain circumstances in which the Seventh Circuit, would apparently find waiver in the case of consent orders, *See Brumby Metals, Inc.v. Bargen*, 275 F.2d 46, 49 (7th Cir. 1960) (holding appellant who had "approved [injunction] as to form prior to [injunction]s submission to the District Court for signature, still able to appeal non-compliance with Rule 65(d); also holding injunctions entered pursuant to consent order would waive Rule 65(d) appeal); *Cf. CFPB*, 957 F.3d at 464 (holding that even in cases of consent orders ambiguity prevents enforcement of provisions). Further, there are cases

where parties fail to adequately brief the issue on appeal, *see, e.g.*, *Retiree, Inc. v. Anspach*, 660 Fed.Appx. 582, 591, n.4 (10th Cir. 2016), raised the issue in a reply brief, *Kreepy Krauly U.S.A., Inc. v. Sta-Rite Indus., Inc.*, 152 F.3d 949, 1998 WL 196750, at *10 (Fed. Cir. Apr. 24, 1998), or failed to raise the issue in prior appeal, *Chicago & N.W. Transp. Co. v. Ry. Labor Execs.' Ass'n*, 908 F.2d 144, 150 (7th Cir. 1990), but obviously that is not the case here.

Indeed, "if ever there was a case" for forfeiture or waiver, it would have been *Scott.* 355 F.Supp.3d 472, *aff'd* 852 Fed.Appx. 731. There, this Court upheld the logic of the district court, that even in the case of an injunction arising from an agreement "drafted jointly by the parties and entered at their request[,]" Rule 65(d) remained mandatory and could not be forfeited or waived. *Id.* at 492-93.

The injunction at issue here was not the injunction that was briefed by the Government Litigants, nor the injunction requested in the complaint, nor an injunction broached in any filing with the Trial Court entered into the docket prior to judgment. *Compare* JA1700-JA1703, JA1709-1718, *with* JA0081-JA0082, JA1259-JA1260.

Finally, it is unclear what preservation would have looked like in this case. This was *not* a proposed order submitted with the Government Litigants' briefing, were it so, Appellants would have most certainly addressed the same in their own briefing, but the time for doing such had long passed, JA1219; nor was this a requested proposed order to

which the Trial Court sought response, JA1925-JA1926; nor was this filed in the case;

nor was this anything but the Government Litigants gratuitously offering the Lower Court

injunctive relief wildly different than that they had previously requested and briefed.

JA1926.

### D. **In Any Event a Failure to Abide by Rule 65 Is a Plain Error.**

Despite significant research and being able to find no case where an appeals court

found waiver where a party immediately and directly appeals from a district court's

granting an injunction, were this Court to find that waiver can occur and has occurred in

this case, the entrance of the injunction in this case was a plain error.

> This court has held that the approach set out by the Supreme Court in *Olano* should
> also be applied in civil cases. *See Taylor v. Virginia Union Univ.,* 193 F.3d 219,
> 239–40 (4th Cir.1999) (en banc) ("Before we can exercise our discretion to correct
> an error not raised below in a civil case, at a minimum, the requirements of [*Olano*
> ] must be satisfied."), *abrogated in part on other grounds by Desert Palace, Inc. v.
> Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Under the *Olano*
> standard, there must be an error, that error must be plain, and the error must affect
> the appellant's substantial rights. *See Olano,* 507 U.S. at 732, 113 S.Ct. 1770;
> *Taylor,* 193 F.3d at 240. Even if these requirements are met, this court is not
> required to correct the error. *See Olano,* 507 U.S. at 735, 113 S.Ct. 1770 ("If the
> forfeited error is plain and affects substantial rights, the court of appeals has
> authority to order correction, but is not required to do so.") (internal quotation
> marks and alteration omitted); *United States v. Stockton,* 349 F.3d 755, 761 (4th
> Cir.2003) (explaining that the correction of a plain error "remains within the
> discretion of the appellate court"). We should exercise our discretion to correct the
> error only if we can conclude, "after examining the particulars of the case, that the
> error seriously affects the fairness, integrity or public reputation of judicial
> proceedings." *Taylor,* 193 F.3d at 240.

*Brickwood Contractors, Inc. v. Datanet Engeineering, Inc.*, 369 F.3d 385, 396-397 (4th Cir. 2004).

The error in this case is plain, *see, supra,* Section I(B) &(C), it is a failure to abide by the clear mandates of this Court, the Supreme Court, and Rule 65. This is more than enough to satisfy the first two prongs of the *Olano* analysis. *See United States v. Promise,* 255 F.3d 150, 160 (4th Cir.2001) (*en banc*) ("To be plain, an error must be clear or obvious, at least by the time of appeal. An error is clear or obvious when the settled law of the Supreme Court or this circuit establishes that an error has occurred. In the absence of such authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain.") (internal quotation marks and citations omitted). Moreover, it is obvious that this ruling, an injunction that *is currently* subjecting multiple litigants to lengthy and expensive contempt proceedings affects appellant's substantial rights. *See U.S. v. Olano,* 507 U.S. 725 734 (1993) (explaining that an appellant's substantial rights are affected by an error that "affected the outcome of the district court proceedings"); *Brickwood Contractors, Inc.* 369 F.3d at 397-99; *see also* JA 1905 (discussing the very real harm to result from the injunction at issue, including contempt, fugitive disentitlement, and incarceration).

In *Brickwood*, it was found that Rule 11 sanctions entered not in compliance with Rule 11 both affected a substantial right and was the sort of issue which seriously affects

the "fairness, integrity or public reputation of judicial proceedings." *Id.* at 397 (citing

*Taylor v. Va. Union Univ.*, 193 F.3d 219, 240 (4th Cir. 1999)). In coming to this holding,

this Court analyzed both the nature and purpose of Rule 11's safe harbor provisions,

which were meant to promote civility, decrease litigation, encourage out-of-court

resolution, and generally to afford notice to those who were going to face punishment. *Id.*

at 397-398.

Similar purposes underly the requirements of Rule 65(d), in addition to facilitating

appellate review:

> Rule [65] was designed to prevent uncertainty and confusion on the part of those
> faced with injunctive orders, and to avoid the possible founding of a contempt
> citation on a decree too vague to be understood. Moreover, without specificity,
> appellate review of an injunctive order is greatly complicated, if not made
> impossible. Rule 65(d) thus serves the twin purposes of providing fair notice of
> what an injunction requires and of facilitating appellate review.

> *CPC,* 214 F.3d at 459 (citations omitted); *accord Wudi Industrial (Shanhai) Co.,*

*Ltd. v. Wong*, 70 F.4th 183, 189 (4th Cir. 2023).

Moreover, the terms of Rule 65(d) "are mandatory and must be observed in every

instance." *See Thomas*, 810 F.2d at 450 (internal quotation marks omitted). And the

Supreme Court has emphasized that:

> the specificity provisions of Rule 65(d) are no mere technical requirements. The
> Rule was designed to prevent uncertainty and confusion on the part of those faced

with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.

*Schmidt*, 414 U.S. at 476.

This is because contempt is a potent weapon that becomes outright horrific when based on a vague order. *See Longshoremen*, 389 U.S. at 76. Multiple parties, both Appellants an others now face potential incarceration on an order too vague to be understood. JA1905.

Finally, injunctions must satisfy the requirements set forth in *Ebay*[13] and be proportional to the irreparable harm complained of; in other words while it is fine for contempt to remedy conduct which is both found to be illegal and to cause irreparable injury, it cannot be painted with such a broad brush as to bar activities which have neither been complained of nor have been shown to have caused harm. The Supreme Court held in *NRLB*, 312 U.S. at 435-36 (holding "the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged ... To justify an order restraining other violations it

---

[13] *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (identifying factors that party must satisfy in order to obtain injunctive relief).

must appear that they bear some resemblance to that which the [wrongdoer] has committed ....”); *Lowery*,*158* F.3d at 767.

As put quite nicely by this Court, “In accord with the policy of [Rule 65(d)], the Supreme Court does not countenance overly broad injunctions due to the threat of costly contempt proceedings *for acts unrelated to those originally judged unlawful.” Additive Controls& Measurement Sys. Inc. v. Flow Data, Inc.,* 986 F.2d 476, 479 (Fed. Cir. 1993) (citing *NLRB,* 312 U.S. at 435-36) (emphasis added)).

Here, the purposes and policies underlying Rule 65 would be undermined if this error was uncorrected and thus the Court should exercise its discretion—assuming it finds a failure to abide by Rule 65(d) waivable—and address the matter because just as was the case with Rule 11, the issues presented in this case stand to “seriously affect[] the fairness, integrity or public reputation of judicial proceedings.” *Id.*

The injunction here is sweeping in scope; it covers pages. *See generally* JA1694-JA1718. It bars innumerable acts and appears designed to subject a gigantic number of third parties to contempt—virtually every employee must subject themselves to potential contempt proceedings, and any company which contracts for Appellants or has a relationship with Appellants must also agree to be subject to contempt; either Appellants could force these people to sign papers making them subject to contempt proceedings, be

subject to contempt themselves for failing to garner the required signatures, or sever ties with those employees or contractors.[14] *See* JA1712-JA1713.

## II.    THE TRIAL COURT ERRED IN GRANTING A DEFAULT SANCTION IN THE FIRST INSTANCE, ONLY NOTICED IN A SUPPLEMENTAL RESPONSE BRIEF, WITHOUT ANALYZING THE EFFICACY OF LESSER SANCTIONS AND ADEQUACY OF NOTICE.

### A. <u>Standard of Review</u>

The decision to impose a default sanction is reviewed for abuse of discretion, *Anderson v. Found. For Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); however, in the case of entering a default sanction, the district court exercises discretion that is more narrow than where it imposes less severe sanctions. *Hathcock*, 53 F.3d at 40. To do this it must balance the competing interests of a party's right to a trial on the merits and the court's desire to enforce discovery orders. *Mey v. Phillips*, 71 F.4th 203, 218 (4th Cir. 2023) (citing *Mutual Fed. Sav. & Loan Ass'n*, 872 F.2d at 92). To strike this balance (the balance between the need to enforce court orders and the right of a party to a fair day in court) The court must consider the factors set forth

---

[14] This is not limited to high-level employees, but anyone who arguably would have responsibilities under the order. *See* JA1712-JA1713. Google, quite frankly likely maintains certain electronic records for Nexus and arguably would be subject to injunction and thus to the acknowledgment provisions; as would innumerable other parties with whom Appellants have contractual relationships were the order to be interpreted literally.

44

in *Wilson*. *Id.* (citing *Mutual Fed. Sav. and Loan Ass'n.*, 872 F.2d at 92). Additionally, a party is entitled to be made aware of the potential default while still having the opportunity to avoid the ultimate sanction. *Id.* (citing *Choice Hotels Int'l v. Goodwin & Boone*, 11 F.3d 469, 471 (4th Cir.1993)).

### B. The Trial Court Abused Its Discretion by Entering a Default Sanction as a First-Instance Sanction under Rule 37.

As noted above, the Trial Court did not have unbridled discretion to impose default, indeed its discretion is most limited when the sanction being considered is dismissal or default. *Id.*; *Hathcock*, 53 F.3d at 40 ("In the case of default, the range of discretion is more narrow than when a court imposes less severe sanctions.") The district court should have viewed defendants' motion—in fact, request to construe a motion in a certain manner made in a supplemental response brief, JA1115—with skepticism in light of the "strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction" that should only be done "with restraint" *United States v. Shaffer Equip. Co.*, 11 F3d 450, 462 (4th Cir. 1993). Case ending sanctions should be reserved for "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules." *Mutual Fed. Sav. and Loan Ass'n.*, 872 F.2d at 92.

Here the Trial Court had never previously imposed sanctions on Appellants— indeed, despite the significant amount of paper filed in this matter, the default arose from

a single discovery dispute[15] and single motion that did not seek default, but rather stated that the same was "inapposite." JA0890.

The Trial Court *only* considered explicitly the imposition of a daily fine, and no other lesser sanction, JA 1206, it reflected that while it had imposed no other "sanctions in <u>this</u> case, civil contempt in federal courts is not new territory for [Appellants] . . . " then went on to consider the message that would be sent if it imposed a lesser sanction, without determining that more severe contempt sanction, *i.e.*, incarceration, or evidentiary sanctions, issue sanctions, preclusion sanctions, *etc.*, would have been ineffective.  JA1207.

The Trial Court failed to specifically analyze the nature of the documents which had not been produced, or their connection to liability or the ability to prove the case, instead addressing generalities, timing, and expense. JA1205-1206.

Moreover, the record at least hinted at the possibility that financial distress may have been the cause of both ESI issues, production issues, and an inability to retain and continue to employ counsel, as recognized by both the Trial Court and Government Entities. JA1206 ("As new counsel for defendants has admitted, defendants are in "a

---

[15] It does not appear that the default was entered either on the Order to Show Cause threatening default for failure to retain counsel, nor does it appear that there was any indication that default as a discovery sanction was sought or contemplated until April 3, 2023. JA1114-JA1115.

46

financial situation which has made retention and payment of counsel difficult if not impossible, which leads to loss of counsel, which compounds procedural difficulties, which makes it more difficult to find counsel." (Dkt. No. 195 at 11.) Defendants have not provided the court with any indication that this financial situation has changed."); JA1181 ("I should say, there was no requirement that monetary sanctions come first. There may be a preference for that. But on this record, as the district court did in *Richards*, the Court can review the record and take into account what I already said earlier, that they're on the record that they have financial difficulties and that monetary sanctions aren't going to do anything."). It appears the primary reason the harshest sanction was argued for was because financial inability made a financial sanction less than desirable, not that other lesser sanctions would have been ineffective:[16]

> The second point, counsel seems to, you know, suggest that the Court is required by these cases to enter a sanction that would have no effect whatsoever, as their former counsel represented, and as their papers today, frankly, represent that they have financial issues. What is the point . . . Sanctions, monetary sanctions will do nothing. Default is the answer.
>
> JA1187-JA1188; *see also* JA1181.

---

[16] To a certain extent it appears as if they were punished for poverty.

Additionally, documents, including electronic documents had been produced despite financial difficulties, *see, e.g.*, JA0996; JA1042-1043, but those financial difficulties made discovery impossible because it was simply not affordable. *See* JA1054.

*Wilson* holds in no uncertain terms that the trial court must meaningfully analyze the mandatory factors it sets forth. As part of that analysis, the trial court must analyze:

> [T]he needs of the discovery party must be evaluated as well as the nature of the non-compliance and the Trial Court must consider "how the absence of such evidence (not produced) would impair (the other party's) ability to establish their case" and whether the non-complying party's "conduct (in not producing documents) would deprive (the other party) of a fair trial." And since every exercise of judicial discretion "must find its basis in good reason," the Trial Court, when granting such sanction, "should clearly state its reasons so that meaningful review may be had on appeal."

> *Wilson*, 561 F.2d at 505 (quotation marks and parenthetical alterations original; footnotes omitted).

The Trial Court did not do so here. In its analysis it stated that large swathes ESI had not been produced, but rather than analyze the nature of the withheld discovery, simply found that the above harmed the ability "for a trial in a just, speedy, and [in]expensive manner." JA1206.

Had a proper analysis been undertaken, lesser sanctions could have been meaningfully analyzed. For instance, if the ESI that was absent prevented establishing liability relating to Individual Appellants, their knowledge and assistance could have

been treated as established. If the lack of ESI prevented knowledge of the daily number of violations, such could have been treated as having occurred every day (something that in fact occurred). If the same related to particular elements of particular counts, obviously a narrower sanction could have been crafted to have addressed the same.

Moving forward, caselaw notes that default is reserved for only the most flagrant of abuses, and therefore consideration of lesser sanctions is required. *See Hathcock*, 53 F.3d at 40-41 (reversing first-instance default where adequate notice not afforded and default not least severe sanction). While this Court upholds sanctions severe sanctions where adequate notice was given, and lesser sanctions were previously imposed, it likewise overturns the same where such is not present. *See id.* (overturning sanction for lack of notice); *cf. Anderson*, 155 F.3d at 504-505 (upholding sanction where previous sanctions imposed and two explicit warnings given).

This was a case where Appellants knew they might face default for *a lack of counsel*, and they retained counsel. *See* JA1110-JA1111. No indication existed that they would face discovery sanctions amounting to default until the Government Litigants filed a supplemental response brief shortly prior to the scheduled hearing. JA1114-JA1130 (requesting for the first time default sanctions). Appellants quickly retained counsel (within days), but by that point could not timely brief and could only attempt to argue against the sanctions at the hearing. *See* JA1112 (setting deadline on April 13, 2023 for responsive briefing).

49

The Court has previously overturned harsh sanctions where inadequate notice was given; and in this case inadequate notice was given in the form of a supplemental response brief requesting default sanctions for the first time where Appellants were unrepresented and only days before the hearing. *See generally Choice Hotels*, 11F.3d at 473.

> It holds only that when district courts choose to impose . . ."harsh sanction" . . . they must make the threat of this sanction explicit and clear so that there can be no question, as there is in this case, as to whether a plaintiff who did not satisfy the conditions understood that, by not satisfying them, he faced prejudicial dismissal. This explicit and clear notice is demanded both by fairness to the plaintiff and by the "sound public policy of deciding cases on their merits," Herbert, 877 F.2d at 269 (quotation omitted), and poses no significant burden on district courts.

> *Id.*

The above was all compounded by the fact that Appellants were not given opportunity, *post-notice* that default might be granted as a discovery sanction, with time to respond, prepare with counsel, or cure.

> As we recently noted in a slightly different context, a party "is entitled to be made aware of th[e] drastic consequence[s] of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid" the sanction. *Choice Hotels Int'l v. Goodwin & Boone,* 11 F.3d 469, 473 (4th Cir.1993). In *Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951 (4th Cir.1987), reversing a default sanction as an abuse of discretion, a panel of this court considered the failure to warn a "salient fact" which distinguished that case from those in which default was appropriate. *Id.* at 954 n. 2. According to the *Lolatchy* court, if a warning had been given, "another case would be presented." *Id.* Because the court had issued only general scheduling orders in the case at bar, the lack of any advance notice is especially problematic.

*Hathcock*, 53. F.3d at 40.

Here notice was only given as to the issue of counsel by the Trial Court; the

Appellants cured the same. No notice issued from the Trial Court relating to possible

default sanctions based on discovery nor was there meaningful opportunity to cure.[17]

### III. <u>THE TRIAL COURT ABUSED ITS DISCRETION BY ENTERING EVIDENTIARY SANCTIONS AFTER THE ENTRANCE OF DEFAULT SANCTIONS GIVEN THE UNIQUE FACTS OF THE CASE.</u>
#### A. <u>Standard of Review</u>

This Court reviews the imposition of sanctions under Rule 37(c) under an abuse of

discretion standard. *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d

592, 595 (4th Cir. 2003) (hereinafter "*Southern States*").

#### B. <u>The Trial Court Failed to Properly Weigh the Factors Announced in Southern States.</u>

The Fourth Circuit has explained that a district court has broad discretion in

determining how to rectify a failure to disclose under Rule 37(c)(1); however, that

discretion should be exercised in a particular manner, specifically:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the

---

[17] This deficiency would have been cured had the continuance and motion for leave to file an untimely brief had been granted.

ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Id.* at 596.

Moreover, *Wilkins v. Montgomery* made clear that *Southern States* provides precatory guidance, but not necessarily the only considerations for a court to analyze or mandatory considerations. 751 F.3d 214, 222 (4th Cir. 2014).

First, in this instance, it is unclear whether or not Appellants failed to *timely* make Rule 26(e) or 26(a). *See* JA1491-JA1493; *see also* JA879 (requesting extension of discovery deadlines); JA0025 (vacating trial dates and requiring parties to work with chambers to set new dates). The Trial Court vacated the trial date, and it was unclear when trial would occur or what dates and times would be later agreed. *Ibid.* Per the Trial Court's order this was to be determined by the parties in communications with chambers. JA0025. This was only complicated by the entrance of default and the parties agreeing on disclosure dates for the damages hearing. JA1213-JA1220.

Even assuming that an untimely disclosure occurred in this case, given the unique facts of this case, and being guided by *Southern States*, this Court should hold the same an abuse of discretion.

## 1. *Importance of Evidence*

Here, the importance of the evidence cannot be overstated. Liability had already been determined—Appellants' were not afforded a trial on the merits—and the only opportunity they had to contest their case was to occur in the damages hearing. JA1209-JA1211. Not only were Appellants prevented from presenting expert testimony as to the value of their services, critical to determining whether or not net-revenues provided an accurate approximation of consumer harm, and to rebutting such assuming that the Government Litigants could meet this burden, there was the cumulative effect that was created by rejecting *all* exhibits and virtually *all* discovery coupled with the compounding nature of a default sanction followed by a preclusive sanction. JA1607-JA1612. As Appellants noted, such in essence transformed the default sanction into a default sanction for a definite sum—and the sum was in the hundreds of millions. JA1469, JA1474-JA145 (noting that an evidentiary sanction on the heels of a default would result in certain damages amounting to over a half of a billion dollars and moot any meaningful damages hearing).

Even assuming the default judgment stands, it is difficult to brook that given the critical nature of the testimony and exhibits given the stance of the case should not have been given significant weight. *Cf.* JA1608-JA1611 (ignoring completely the importance of the evidence, testimony, and exhibits).

## 2. *Surprise and Ability to Cure*

Moreover, it could have come as no surprise that there was to be a hearing on damages following default, especially given the lack of discovery and disclosures which actually had occurred—it is hard to believe given the scope of liability that no one believed any evidence would be presented. *Cf.* JA1611 (describing the presentation of any witness bar Mr. Ajin as highly surprising, but primarily analyzing prejudice and ignoring that short extension of trial dates or brief reopening of discovery could cure).

The Government Entities requested default sanctions and desired a hearing on damages quickly, it could come as no surprise that evidence and witnesses would be presented at the same hearing. JA1114-JA1115, JA1219. Whether it was prudent to request a damages hearing and disclosures on the timetable requested is an altogether different question, and the parties certainly could have agreed to a different disclosure schedule which, or a limited and short re-opening of discovery, to address discovery relating to damages—put another way, it would have been perfectly curable, something never contemplated by the Trial Court. JA1611 (holding any cure would be impossible).

The exhibits and testimony in the instant case were critical to trial—absent the same, Appellants were left with a single witness who lacked relevant information (and who in any event may not have been able to testify) and could report on virtually nothing of importance. JA1612, JA1475. Were this truly what was expected, it is wholly unclear *why* the parties proceeded beyond simply defaulting and went through the motions relating to a damages hearing.

### 3. *Explanation and Disruption*

Finally, Appellants explanation for both their failure to disclose the same, it simply did not exists, and discovery had ground to a complete standstill under prior counsel, coupled with the fact that the same was timely filed under the newly agreed deadlines post-default seemed compelling and prejudice, recognized, could obviously have been mitigated by a minimal continuance. JA1495-JA1496 (noting a minimal continuance or re-opening of discovery would cure). The Government Litigants stood to lose nothing; their case had already been won by default; the maximum amount of disruption to the trial would have been its occurrence in an adversarial sense and a short delay should the Government Litigants wished for a chance to depose witnesses.

### C. <u>Given the Already Drastic Sanctions Imposed More Caution Should Have Been Utilized.</u>

While this court has not explicitly held that the preclusion of expert testimony is a drastic remedy, which should only occur where there is significant prejudice, the concept has been announced by district courts within this Circuit. *See, e.g.*, *Potomac Elec. Power Co. v. Elec. Motor Supply Inc*, 190 F.R.D.372, 377-378 (D.Md. 1999) (collecting cases). It can only be stressed that the preclusion of an expert witness when coupled with preclusion of all other proposed witness bar one, and the preclusion of all exhibits, in a case such as this where default was entered was an extremely drastic holding, where the importance of the evidence, in the context of both due process and public policy favoring

hearings on the merits, is considered it is hard to underestimate the weightiness of this factor.

This sanction was just as damaging if not more so than the terminating sanction through default and should have been considered through that lens. *See Hathcock*, 53 F.3d at 40-41(noting considerations which are required given the harshness of certain sanctions). In essence this was an $800,000,000 first-instance discovery sanction levied on a business (and its owners) that in the totality of its existence grossed a bit over $200,000,000. JA1741, JA1696,

## IV.    THE TRIAL COURT ERRED IN CALCULATING RESTITUTION WHERE IT IS UNCLEAR THE RELIEF GRANTED WAS LEGAL IN NATURE AND THE TRIAL COURT RELIED EXCLUSIVELY ON JURISPRUDENCE GROUNDED IN EQUITABLE RESTITUTION.

Equitable restitution simply cannot be based on a "net-revenues." This calculation has been rejected by the Supreme Court. *See generally Liu v. SEC*, 591 U.S. 71 (2020). If the award was equitable, then the same was wrongly calculated. *See id.*; *see also Consumer First Legal Grp., LLC*, 6 F.4th at 711.

The Seventh Circuit overturned a net-revenue damages calculation because the district court supported its restitution award by citing to precedent which dealt with *equitable* restitution. *Id.* (noting district court relied on *FTC v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997) in justifying its net-revenue calculation). Indeed, this holding aligns with the Supreme Court's reasoning in *Liu*, which rejects a label-determinative analysis of the

56

legal or equitable nature of a remedy. *See Liu*, 591 U.S. at 76, n. 1 (rejecting analysis that is determined by the label or term applied to relief as elevating form over substance); *id.* 79-80 (noting regardless of label reliefs equitable or legal nature is to be determined by its form and substance).

In short, the jurisprudential analysis (especially the cases relied upon) are telling when determining whether restitution is legal or equitable, *Consumer First*, 6 F.4th at 711, and the particular label a party or the court attaches to the relief is largely inconsequential. *Liu*, 591 U.S. at 76, n. 1.

Given this, one is left to analyze whether or not the award here, issued by the Trial Court, payable by order on ten days, was based primarily jurisprudence grounded in equity or grounded in relief at law. JA1696. The Trial Court relies on *Gordon*, JA1740 (citing *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016)), for the proposition that a net revenues calculation is an acceptable calculation of restitution.

*Gordon*, and its progeny are built upon various cases that could never be based on a "net revenue" calculation today. For instance, *Gordan* at page 1195 (discussing remedies) relies on *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009), a case wherein the Ninth Circuit was analyzing the Trial Courts' discretion in "granting equitable monetary relief[.]" *Stefanchik*, 559 F.3d at 931. The *Stefanchik* court began by discussing disgorgement and moved on to discuss other *equitable* monetary relief, rejecting the argument that the defendants should not be liable for the full amounts because "[e]*quity*

57

may require a defendant to restore his victims . . . where the loss suffered is greater than the unjust enrichment." *Id.* (emphasis added).

It was clearly a case that dealt with calculating *equitable* monetary relief. *Id.* *Stafanchick*, relies on *Febre*, 128 F.3d 530,[18] which discusses "equitable ancillary relief" and likewise holds that "equitable ancillary relief" can be based on the full amount of consumer losses. 128 F.3d at at 537. Following the *Febre* chain back one is led to *FTC v. Gem Merchandising Corp.*, 87 F.3d 466 (11th Cir.1996) which likewise discusses "equitable powers" and the ability to order "ancillary equitable relief." 87 F.3d at 469. Indeed, it discusses the power, under equity, to order restitution. *Id*. Down this same road is *FTC v. Amy Travel Service, Inc*., 875 F.2d 564 (7th Cir. 1989), which likewise discusses restitution in the realm of ancillary and necessary equitable relief. 875 F.2d at 570-71

Beyond *Stefachick*, the *Gordon* Court relies on *FTC v. Gill* which unsurprisingly discusses "equitable monetary relief" and is clearly discussing restitution in equitable sense. 265 F.3d 944, 958-59 (9th Cir. 2001). Indeed, *Gill* cites to *Pantron*, which relies on *Amy Travel Services* and is clearly discussing restitution in the equitable sense. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994).

---

[18] The very case cited by the district court that was overturned in *First Legal Group*, 6 F.4th at 711.

Beyond this *Gordon* relies on *SEC v. Wallenbrock*, which analyzes the courts "broad equity powers" and rejects offsets in analyzing the equitable remedy of disgorgement, finding that offsets would offend principles of equity which allows a court to order disgorgement in an amount equal to the sum of all illegal payments. 440 F.3d 1109, 1113 (9th Cir.2006).

Basing a *legal* restitution award on a calculation method that is clearly based on principles of *equitable* restitution is an error. *Consumer First*, 6 F.4th at 711, The Trial Court relied on *Gordon* and *CFPB v. Cashcall*, 35 F.4th 734, 751 (9th Cir. 2023)[19] in other words a derivative case which relies secondhand on the same equitable foundation; beyond this the Trial Court relies on *FTC v. Kuykendall*, JA1741, which unsurprisingly deals with equitable relief—including canonical cases of equitable relief noted above, *Febre, Amy Travel Services, and Gill.* 371 F.3d 745, 765 (10th Cir. 2004).

All of the above precedent discussed relies on a trick at equity which allows a party to avoid demonstrating damages—it is not a legal remedy—it allows courts to "effect complete justice" even in the absence of "*actual damages*." *Gill*, 265 F.3d at 958.  It is

---

[19] *Cashcall* is dependent on the restitution calculation, *i.e.*, the equitably grounded one, present in *Gordon. See* 35 F.4th at 750 (relying on *Gordon*, 813 F.3d at 1195, in turn quoting and relying on *Sefanchik*, 559 F.3d at 931). The entire castle is built on a foundation of *equitable* jurisprudence.

legal legerdemain that works *at equity* because the goal is ultimate fairness and not necessarily addressing damages or a party's loss. *Id.*

In essence, *legal* restitution is concerned with monetary loss, *i.e.*, making a party whole given the damages they have been shown to have suffered. *See Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161, 1178 (10th Cir. 2022) (Phillips, J. concurring) (noting that the similarity between legal restitutions and normal damages may make the legal remedy superfluous if authorized by statute), *cert. denied*, 143 S. Ct. 2610, 216 L. Ed. 2d 1208 (2023).

The CFPB states it has asked for legal restitution, and yet, the Trial Court most certainly based its decision in caselaw grounded in equity and equitable restitution. It did not appear to understand that legal restitution had to be based on losses "actual damages."

Everyone of the above cases, the Trial Court's decision is based on, did not concern itself with actual losses because it was either knowingly addressing equitable relief or had lost sight of the clearly equitable of the foundations of *Gordon*.

This being said, the question is should legal relief reflect the amount of actual loss, and the response is a resounding, yes.[20] Appellant argued for exactly this, adopting the

---

[20] The Trial Court may certainly utilize a burden shifting framework, but it cannot simply ignore whether or not the net revenues approximate loss. Legal relief obviously meant to redress actual damages.

burden-shifting test, but ensuring it actually relates to loss which requires a showing, as an initial burden, that net revenues reasonably approximate actual loss. JA1478-JA1480.

The Seventh Circuit, in light of *Lui* has reversed a trial court's decision that did not appear firmly grounded in the jurisprudence of *legal* restitution where it utilized net-revenues. *Consumer First*, 6 F.4th at 71. The Trial Court's decision is built exclusively upon *equitable foundations*, because it relied on equitable cases, and thus equitable principles, its revenue calculation based on the same should be reversed.[21]

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should remand this matter to the District Court to proceed in accordance with its decision containing specific instructions to vacate the injunctive relief and judgment entered, and to proceed to determine if severe sanctions are justified only after affording notice and opportunity to cure, and grant all other relief this Court believes just and proper.

---

[21] This is compounded by the unusual order that it be paid by a certain specific method in ten days. JA1696.

Dated: July 16, 2024                    Respectfully submitted,

Cold Brook, NY                          /s/ Zachary Lawrence

                                        Zachary Lawrence

                                        Lawrence Law Firm PLLC
                                        166 Five Acres Lane
                                        Cold Brook, NY 13324
                                        202-468-9486
                                        zach@zlawpllc.com
                                        *Attorney for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Rule 34(a), Appellants have not chosen to request oral arguments. To the extent the Court or any other party wishes to hold arguments Appellants believe such might be appropriate because of the important issues relating to Rule 65, the mandatory nature of the same, and the ability of a court to disregard its mandates.


Dated: July 16, 2024
Cold Brook, NY

Respectfully submitted,

/s/ Zachary Lawrence

Zachary Lawrence

Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
202-468-9486
zach@zlawpllc.com
*Attorney for Appellants*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains  14011  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a Times New Roman in 14-point font generated by a Mac OSX version of Microsoft Word for Mac (Ver. 16.86).

Dated: July 16, 2024
Cold Brook, NY

Respectfully submitted,

/s/ Zachary Lawrence

Zachary Lawrence

Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
202-468-9486
zach@zlawpllc.com
*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I certify that today, July 16, 2024, I caused to be electronically filed the foregoing

Opening Brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth

Circuit using the appellate CM/ECF system and that copies of the foregoing were

electronically served to all counsel of record.


Dated: July 16, 2024                    Respectfully submitted,

Cold Brook, NY                          /s/ Zachary Lawrence

                                        Zachary Lawrence

                                        Lawrence Law Firm PLLC
                                        166 Five Acres Lane
                                        Cold Brook, NY 13324
                                        202-468-9486
                                        zach@zlawpllc.com
                                        *Attorney for Appellants*